### BUTLER BROS. *v.* UNITED STATES (No. 949).[1]

IMITATION MEERSCHAUM PIPES.

The importer was bound to show by a preponderance of evidence in support of his protest that the pipes here were made of clay; but there appears in the conflicting testimony a preponderance of proof in favor of the Government's contention that the pipes were not made of clay.

United States Court of Customs Appeals, April 22, 1913.

APPEAL from Board of United States General Appraisers, Abstract 28759 (T. D. 32584).
[Affirmed.]

*Lester C. Childs* for appellants.

*William L. Wemple*, Assistant Attorney General (*Martin T. Baldwin*, special attorney, of counsel; *Charles Duane Baker*, special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This appeal presents a question of fact. The importation was invoiced as "Vienna meerschaum pipes." The appraiser reported them to the collector as "tobacco pipes with stems of celluloid and bowls composed of imitation meerschaum" and that "they are not pipes composed of clay, as claimed." The importers, appellants here, sought to controvert this report before the board by the introduction of an analytical chemist, who testified in substance as follows: That the article was composed of 10.25 per cent wax, 52.52 per cent silica, 19.26 per cent magnesia, 5.5 per cent alumina, and some moisture; that, in his opinion, aside from the 10.25 per cent wax, the rest was of mineral substance that would be classed as a clay, and testified precisely as follows:

Q. And was made from a composition, was it?—A. Possibly a composition; yes, sir.

Q. Probably a composition?—A. Probably a composition containing clay as one of the constituents.

Q. Do you know of any clay or earth that shows the analysis that you have given there?—A. Just of that analysis?

Q. Yes.—A. No; no; not just of that analysis.

Q. Not containing those proportions of silica and alumina?—A. The natural clays as found I don't recall any. There may be some, but I don't recall any, for instance, that contains quite as large a proportion of magnesia as this shows.

---

[1] Reported in T. D. 33368 (24 Treas. Dec., 589).

The witness further testified:

I should say that it was a pipe made essentially of clay.

The samples were submitted to the Government chemist at the port of New York for analysis, who returned that "both samples consist of meerschaum."

The board held that—

The evidence on which these protests were submitted does not warrant a disturbance of the collector's action. The protests are therefore overruled.

The statute reads as follows:

475. Pipes and smokers' articles: Common tobacco pipes and pipe bowls made wholly of clay, valued at not more than forty cents per gross, fifteen cents per gross; other tobacco pipes and pipe bowls of clay, fifty cents per gross and twenty-five per centum ad valorem; other pipes and pipe bowls of whatever material composed, and all smokers' articles whatsoever, not specially provided for in this section, including cigarette books, cigarette book covers, pouches for smoking or chewing tobacco, and cigarette paper in all forms, sixty per centum ad valorem.

The sole question is whether or not, within the terms of this statute, the evidence shows the goods to be "other tobacco pipes and pipe bowls of clay," or "other pipes and pipe bowls of whatever material composed." It was incumbent upon the importers, appellants, in support of their protest, to show by a preponderance of the evidence that the importations in question were made of clay. The evidence is conflicting in all material respects, but we think preponderates in favor of the Government, and under the rule established by this court the decision of the Board of General Appraisers should be, and is, *affirmed.*